The clerk will call the next case. Case number 3140780, People of the State of Illinois Talent, by Justin Nicolosi, v. Siyach Zayed, athlete, by Gmita Galkas. Seems like I just left you gentlemen. Mr. Nicolosi, you may proceed. Thank you. Good afternoon, your honors. May it please the court, counsel. Your honors, the facts in this case were developed at a motion to suppress hearing. The main witness was Will County Sheriff's deputy, Brian Lukich, who testified on December 22, 2013, just before 5 o'clock. He was patrolling and he stopped the vehicle for not using its turn signal. As the car was pulling over, Lukich testified, he saw a backseat passenger who turned out to be the defendant. Lukich observed the defendant moving around. He testified that his head was near the roof line, as if the defendant was trying to stand up in the backseat. This was as the car was pulling over. Once it was pulled over, Lukich approached the driver, the driver's side, and with the window down, he smelled, the deputy smelled burnt cannabis. At this point, Lukich testified at the hearing. He was worried for his own safety, based on both the smell of cannabis and mainly the defendant's movements. He said, quote, he didn't know if the defendant was hiding a weapon or narcotics. So he had the driver exit, put the driver in temporary custody. So he had narcotics, he was fearing for his safety? No, he said he didn't know if he had narcotics or a weapon. So at this point, he didn't know. But he did testify that he was fearing for his safety, because of course, that could have been a weapon at this point. Lukich has no idea. He just knew that based on the movements, the defendant was doing something in the backseat. So he had, based on that, he had the defendant exit, and he patted him down, and he felt an unusual lump near the defendant's crotch, that Lukich testified was not consistent with the human anatomy. And this belief, this opinion, was based on Lukich's experience. With the human anatomy? Sure. Oh, okay. Well, I'm sure that... I don't know, I didn't read that. Well, no, I mean, he testified there was a crunching sound that he felt near the crotch. That was not consistent with the human anatomy. The lump wasn't either. And Lukich testified he felt this crunching over 100 times before. He also testified that he had found drugs near crotches well over 100 times. And he had also found guns in crotches, quote, very often. Based on this experience... They never felt crunchy to him. A weapon, I mean, his experience told him this was not a weapon, right? At that point, yes, he did testify based on his experience. He knew that it was narcotics only after he touched it. The judge granted the motion to suppress, saying that there was no probable cause in this case. And the judge added that Lukich possibly had a right to conduct a Terry search, but the deputy went way beyond that. That was what the trial judge stated. The people would submit that Deputy Lukich did have the reasonable articulable suspicion of criminal activity that justified both getting the defendant out of the vehicle and also patting the defendant down. Getting the defendant out of the vehicle is pretty straightforward. The people would submit there was both a reasonable suspicion of criminal activity based on, number one, the smelling of burnt cannabis when Deputy Lukich approached the vehicle. But, of course, more importantly were the, quote, furtive movements that the defendant was exhibiting in the back of the car as Lukich was pulling the vehicle over. People would submit that also the fact that there were three passengers adds to the situation. Plus, as I cited in my brief, cases such as People v. Salvatore in 1992, Fourth District, that based on similar indicia, such as cannabis, furtive movements, and that case also had a dog sniff, but the fact is with those present, having somebody exit a vehicle is a, quote, mere inconvenience, end quote. So, therefore, the exit was proper. Moving to the pat-down, the people also submit that reasonable suspicion supported that procedure as well. Of course, the most important thing in this case were the furtive movements that the defendant was exhibiting in the back of the vehicle. If he had patted him down, you know, just doing the pat-down and, like, you know, a pen or a pencil, and so the officer pats him and recognizes, okay, it's not a weapon, and he's like, it's, you know, a checkbook or a pad if it feels like it, would he have the right to take that out at that point and look at it? No, that's not a crime, Your Honor. Okay, so is it a crime to have a crunchy, lumpy packet of something that, you know, what it is down your pants? Well, that's, Your Honor, the deputy testified he knew what it was. It's not that he was guessing what it was at that point. He knew it was narcotics. He testified to that. So he didn't have to manipulate this thing. He didn't have to guess. He knew what it was based on the crunch sound. And based on, again, there are more things in play than just the pat. He also knew that he observed this defendant basically trying to stand up in this vehicle as it was being pulled over, as if he was trying to hide something. If he thought it was a weapon, would he have the right to take the defendant out and search him first before he did the driver for his safety? Did he believe his safety was at risk? I would assume he could have, yes. But he chose not to. He got the defendant out first. And fiddled around with him a fair amount. I don't remember. I haven't seen the video in a while. I don't remember how long he was with the driver. But I don't believe... This is a rather aggressive pat-down, isn't it? I don't think the original... Again, I haven't seen the video in a while. But I don't remember the actual pat-down being overly aggressive. Again, I could be wrong. I haven't seen it in a while. There's, of course, an issue with what happens after the pat-down, as counsel writes in his brief. But as for the pat-down, I don't remember it being overly aggressive. But, you know, regardless of this, you know, the pat-down, I think Deputy Lukic's testimony needs to carry some weight here. Because, again, there was no guessing after this pat-down what was in the defendant's crotch area. Based on his experience, you know, again, more than 100 times before Deputy Lukic has felt this same feeling. And he testified also that he found drugs in the same area, the crotch area of people, well over 100 times. And in our brief, we cited cases where a deputy's experience and an officer's experience can go towards, can support his belief that knowing what's going on here. People versus more I cited pretty extensively in my brief, where an officer's experience can be taken into account, you know, in addition to furtive movements and other, you know, burnt cannabis and things like that, too. Considering the totality of what the officer was experiencing at that point, that justified his actions, such as the pat-down and having the defendant exit. Was that argument raised about the smell of the burnt cannabis? What do you mean raised? I mean, I discussed it in my brief. Okay. Okay. I cited my brief as a consideration that the officer had. But was it raised below? I mean, it was discussed below. I don't remember if it was specifically raised. I mean, the defendant filed a motion to suppress. I guess I don't understand exactly the context of the question. Well, I thought there was an argument that the issue had not been preserved and couldn't be argued here. That was about probable cause. That was a probable cause argument that counsel raised that I haven't even addressed at this point. And I'm not going to during this argument. I'm just talking about reasonable suspicion to conduct the pat-down. I think it's important to note that the cases that I cite discuss the fact that a court cannot expect an officer to have – the courts cannot demand scientific certainty from these officers when they're processing a scene, an individual or a car. Officers must use their common sense judgments. They must draw inferences from their own behavior, their own experiences. And I think it's very important to, again, consider what this officer on his own with three individuals in this car, he testified that he was concerned for his safety based on the movements of this individual who could have been hiding anything in his pants. The weapon, I obviously get that. That's the safety of a weapon's pat-down. But safety, I guess I don't understand the tie-in with the narcotics. Why he would – I mean, why that is a safety concern. Is it, I mean, by virtue of him having them, he would have felt unsafe? I guess I'm not quite sure. Or is it a two-fold that he was doing a pat-down for officer safety because of the fear of the weapon and then the smell of the cannabis, he thought, would lead him to believe that he could have had narcotics? And when he says narcotics, is that like a blanket? I mean, is it like if I smell cannabis, I'm supposed to think crack cocaine? I mean, is that the connection? Or was he thinking that there was going to be cannabis in the car? Your Honor, he referred to safety. He wasn't talking about the drugs. I don't – I truly believe that. He mentioned that based on – he said that, I quote, he didn't know if the defendant was hiding a weapon or narcotics. When he talked about being worried for his own safety, he's talking about the gun at that point. But at the same token, he, of course, doesn't know if he's going to find a gun or drugs. How could he possibly know that? He just knows that this person was probably hiding something based on his movements. But the fact is, the possibility exists, of course, that he had a gun, that he was hiding a gun. That's why Lukacs was worried about his safety. That's why he had him exit the car and pat him down. Is this like the plain field doctrine, like a plain field doctrine? I would argue yes. Your Honor, I think if he would have found a gun at this point, I think we would be having the same discussion, because I think if there was a gun hidden down there and you felt a gun, officers, based on their experience, probably know what a gun feels like, even within close. I would assume, again, this is hypothetical, because he didn't testify to that, because they didn't find a gun. But the fact is, you can't see something, you feel it. And if you testify that you felt this over 100 times before, and based on that you know what it is, I think it would have been kind of unreasonable for the officer to have known that this was narcotics based on touching it and then left it there, I think. I think that sounds like a pretty ridiculous hypothetical. If you knew for a fact that it was drugs, and to say, oh, because it's not a weapon, I can't take it, well, but going back to Judge O'Brien's earlier hypothetical, if you felt a checkbook, let's say you knew for a fact it was a checkbook, can you take it? Well, no, because you're not committing a crime by having a checkbook. But if you have drugs in your pants, you're committing a crime, and that's why loopage was justifiable in confiscating that item. What else could he have done other than do that at that point? Would he have probable cause at that point? I would argue yes, he would. Well, would he need to then continue with the groping? Your Honor. I mean, you could take him into custody at that point, correct? I would argue yes, he could. You could handcuff him at that point. Yes. I would argue he could because, of course, he was confident there were drugs there. But regardless of the method of – I mean, you get close to sexual assault, don't you, in these facts?  And regardless of the method of obtaining these drugs, I believe that because probable cause already existed at the point he conducted whatever type of – taking the pants off, whatever happened after he felt that narcotics, I don't think that should taint the search in any way, shape, or form. Because, again, probable cause already existed that these drugs existed. Counsel, that's two minutes. Thank you. And with that, that's all I have. If there are any other questions, I'd be happy to answer them. Thank you, Mr. Nicolosi. Mr. Golthus. May it please the Court, Demetri Golthus, Assistant Appellate Defender, on behalf of Steve Zaid, defendant at L.A. Your Honors, regardless of whether Deputy Lucas was at risk of Mr. Zaid with a serious search for weapons or even a probable cause search for drugs, and regardless of whether there was legal cause for either of those searches, this Court should still affirm the trial court suppression order. If opposing counsel doesn't want to say it, I will. There was a strip search done in this case. And if the State wants to ignore the Fourth Amendment's use of reasonableness, they're free to do so. The Fourth Amendment requires that a search be reasonable, regardless of whether there's legal cause for that search. Deputy Lukich searched my client's genitals. The place where my client's interest in privacy was at its highest. On the street in a residential neighborhood, without taking any steps to shield my client's privacy, anyone in the area could have seen it, and there was no exigency to justify a public strip search. Now, Section 103-1 of the Code of Criminal Procedure provides that when you perform a strip search, it shall be performed in, quote, it cannot be observed by persons not physically conducting the search, end quote. The statute also provides that before conducting a strip search, a peace officer has to first get written permission from the police commander. Deputy Lukich did not comply with either of these requirements. And under that statute, he committed official misconduct, which is a Class III felony. Now, aside from this conduct being criminal, it was also a violation of the Fourth Amendment. Now, what's reasonable under the Fourth Amendment depends on the facts and the circumstances, and it requires a balancing of the need for the particular intrusion and the invasion of a private interest that the search entails. Of course, considering whether a strip search is reasonable, consider the four factors that the Supreme Court articulated in Bell v. Wolffish and which the whole of British U.R. articulated in your opinion in Carter, and that's the scope of the intrusion, the manner in which the search was performed, the location where the search was performed, and the justification for the search. Consideration of all four of those factors in this case compel the conclusion that the search was unreasonable. The scope of the intrusion in this case was great. My client was a teenager. He had his hands handcuffed behind his back. Deputy Lukitsch lifted up his shirt, lifted up his jacket, unzipped his pants, unbuckled his pants, grabbed his underwear, pulled it out, and probed my client's genitals for narcotics. And the video shows that. And if you haven't seen the video, I encourage all of your honors to watch it. Now, any reasonable person getting their genitals searched in public would certainly be highly humiliated, would find it highly embarrassing and intrusive. The video confirms that this is how my client felt. As he was getting his genitals searched, you can see him bending forward at the waist. My client even told Deputy Lukitsch as he was being strip searched, he said, quote, are you going to whip my dick out, dude? Now, the video confirms that Deputy Lukitsch had absolutely no regard for my client's privacy. This search was performed in a residential neighborhood in Mokino. It's not a high crime area. At rush hour. I'm sorry? At rush hour. I'll get to that, Your Honor, yes. They were surrounded by homes, and the deputy did absolutely nothing to shield my client from view. The video confirms that the deputy really didn't have any concern for my client's privacy. When he was probing my client's genitals, and my client expressed a concern that his genitals were going to be whipped out, Deputy Lukitsch's response was, there's no cars. Literally a second later, Deputy Lukitsch looks up and says, oh, we'll wait for the cars. Nine cars begin to drive by, the first of which was a white limousine. Deputy Lukitsch was completely oblivious to the fact that these cars were coming. All he cared about was getting in my client's pants and looking for drugs. Now, as his clients passed, you would hope that the deputy would say, okay, let me do something to shield this person, so that at the very least his undergarments or possibly his genitals aren't viewed by the public. Instead, he just stands there, holding onto my client's underwear, flashing a flashlight at his midsection while all these cars drive by. After the cars drive by, Deputy Lukitsch doesn't do anything to say, okay, maybe I should take this to a private place. He just continues the search on the street. Importantly, there wasn't any justification to do this search in a public place. There wasn't any exigent circumstance, which is what most courts, considering this issue, require to perform a strip search in public. Now, admittedly, when you do a national search of the cases involving strip searches in public, there aren't that many, and as I said in my brief, one court has explained the reason for this as these types of things simply do not happen. Now, hiding drugs in one's garage does not pose a danger of serious and imminent harm to the public. There wasn't a threat of flights. There wasn't a threat of destruction of evidence. Again, my client had his hands handcuffed behind his back. Those drugs weren't going anywhere, and Deputy Lukitsch could have very easily just waited to perform this strip search in a private place. He didn't do that, and that's what the law required. He chose the most intrusive way to search my client as opposed to the least intrusive. So for all these reasons, we would respectfully request that you affirm a trial court suppression order on the basis that it was an unreasonable search under the Fourth Amendment. When you say private place, you think there was—obviously, he was in custody at that point. Is that correct? Are you going to concede at the time of the search? He was being—yeah, he's been seized. He's been detained for a search. So private place could have been a police station, correct? Absolutely. I even said in one case in my brief where a private place was a local fire station. It could be anywhere where he cannot be seen by anyone else except the person conducting the search. It could be anywhere. But absolutely, the police station would have been ideal. So spoilation of evidence is not a factor? Not— Potential spoilation of evidence. Again, he had his hands handcuffed behind his back. They were suspected to be in his crotch, held in by his clothes, and as long as you keep an eye on them, no, I don't think you have to deal with spoilation of evidence. Those drugs weren't going anywhere. Any other questions? And then just to touch on the facts that opposing counsel did actually argue, if this court were to conclude that the deputy's frisk of my client was a terry frisk on the basis of the belief that my client was armed and dangerous, this court should still affirm the trial court suppression order. And there's three reasons for that. The first is that a terry frisk must be strictly limited to the search for weapons. Deputy Lukashena's testimony, he admitted that he performed his frisk to search for both weapons and narcotics. So by his own admission, his search exceeded the scope of terry, and it was unlawful because he was looking for narcotics. And the court said again and again that a terry frisk must be strictly limited to the search for weapons. The second reason why this frisk was unlawful was because the facts and circumstances would not justify a reasonably prudent person into believing that my client was armed and dangerous. Again, my client and the people that he was with were teenagers. They were driving around in a residential neighborhood in the late afternoon. The traffic violation they got pulled over for was a failure to signal within an appropriate distance of an intersection. They pulled over immediately. The driver and my client followed the officer's instructions. The officer didn't have any type of information that, you know, my client was the previous, he had some other dealings with my client or he looked into the computer and said that my client was, you know, a violent or dangerous person or he would have a weapon, that he had some kind of a criminal history. The officer didn't have any information like that. And again, I mean, what the state is arguing on is the spell of cannabis, which I would admit if you are a drug trafficker or you're a drug dealer, then you have a connection of drugs to weapons. But mere cannabis possession or cannabis use, there's no nexus to possession of a weapon. High schoolers, which is most likely what my client was at this time, he was 18 years old, high schoolers smoke cannabis. I mean, I don't think it's fair to sit here and say, oh, because I smoke cannabis, oh, bam, there's a weapon. The movements in the backseat. If you watch the video of the traffic stop, when the car is being pulled over, you don't see my client moving in the backseat. Now, even if we were to take Deputy Lukacs at his word that my client was moving, he admitted that my client's head was already towards the top of the car because my client was a tall person and the car was small. A small movement in a car is normal. I mean, especially when you consider what happened here. Just that night, my client's a passenger in the backseat, and all of a sudden you see red and blue lights going off. I mean, the normal reaction would be to sit up in your seat and to see, okay, where are these lights coming from? I mean, when you're being stopped by a police car, it's not shocking that he's sat up in his seat and his head moves up to the top of the car. What are the circumstances when and if the defendant in this case could have been searched for cannabis or for drugs? I mean, you do have a pungent odor of marijuana when the officer came to process the traffic violation. Am I correct? Yeah, I'd like to make several points in response to that. First and foremost, you are getting at probable cause to search for drugs. The state did not raise that below, so it's forfeit. Secondly, there was not a factual finding in this case by the trial judge that the deputy did, in fact, smell cannabis. And there also was not a factual finding that the judge found the deputy to be federal. So I'm not going to concede that the deputy did, in fact, smell cannabis on this record. Now, if you're honest in the de novo review of the video, you have the video, you don't have to rely on the officer's testimony. If you look a few years in the de novo review of the video, factually find that he did, in fact, smell cannabis, then I would acknowledge under the case law, under People v. Stout, that smelling cannabis in a car gives an officer probable cause to search the occupants of that car for drugs. Okay, you concede that. I would concede that. As a principle, as a general principle. As a general principle. But then again, you would still have to deal with the reasonableness of the search, which the state just cannot. The final reason for viewing this risk as going beyond theory is that the video of the traffic stop shows that Deputy Lukic went beyond what was necessary for the discovery of weapons, meaning a careful pat-down of my client's outer clothing. The video shows, and I've seen it plenty of times, the officer going behind my client and reaching in between his legs and grabbing him between his legs. The grab is evidenced by a movement in my client's pants. Now, if the video isn't enough, look at Deputy Lukic's testimony. He testified that he felt crunching in his hand as opposed to simply on his hand or by his hand. And I would submit that when something is in your hand, it is literally in your hand. You are squeezing it. You are manipulating it. And that goes beyond a lawful search. Because it goes beyond the common understanding of a pat-down. Is that correct? Correct. Okay. Counsel has two minutes. Therefore, this court, for those reasons, can't affirm a trial court's order as well. And unless Your Honor has any further questions, we would ask that you affirm a trial court's judgment. Thank you. Thank you. Mr. Nicolosi for rebuttal. Your Honors, very briefly. Again, the reason I didn't stress the quote strip search was because, again, as I had said just during my main argument earlier, this came after a probable cause existed, that drugs were in this defendant's possession. So I'm not condoning what the officer did. By no means am I doing that. But the fact of the matter is probable cause, as Justice Holdridge said earlier, he asked if the defendant could have been arrested at that point. And I said yes, because probable cause existed that he had narcotics on him. The deputy didn't do that. I don't know why. We'd have to ask him, of course. Was this the best way to go about obtaining those drugs? Of course not. But the fact of the matter is they occurred after probable cause already existed. But when you have this, if there's probable cause, but then there's a Fourth Amendment violation, and then does that, I guess it's a sanction for the violation? You are then not allowed to have the evidence because you've violated his rights in the procedure of the strip search? Your Honor, because, again, I don't think that should invalidate the probable cause that already existed under, as I argued, lawful means before. That should be a sanction for that. Counsel was discussing another possible sanction in his brief about how it's a misconduct and so forth. Whether that's pursued, I don't know, of course. But I don't believe in this case with the deputy in a lawful manner establishing probable cause that the drugs existed, I don't believe that would be the appropriate sanction here. Moving on to one other thing that counsel mentioned, talking about the movements in the car, I will just direct this court to my brief where I cite several cases that discussed how furtive movements by individuals in vehicles warranted further detention and further searches and other things like that. People v. Day is one of them. There's a federal case, U.S. v. Fryer, and also Salvatore, which I stated earlier. For all these reasons and everything I stated earlier, the people would respectfully request that this court reverse the trial judge's granting of the motion to suppress down below. Mr. Nicolosi, if the tape doesn't show any movement on the part of the defendant in the back seat, does that wipe out your argument? No, Your Honor, and I watched that tape several times, and I do remember specifically that part. There wasn't a whole lot of movement visible. Again, I don't believe that video was the clearest HD quality video that exists. Again, I think we need to go by the deputy's testimony. He testified he clearly saw these movements, whether they were small or subtle or what have you. The deputy testified that he saw them. That was the whole reason that he got the defendant out of the car. We're seeing a lot of things going on these days where deputies and police officers are saying one thing, and the videotapes are showing something completely different. Well, Your Honor, as counsel argued, he argued that the movement was small because this was a tall person. So I would argue that maybe it was not visible. Again, this video wasn't crystal clear, so maybe it wasn't visible on the video. What did the trial court find in that regard? He argued that a Terry stop was the deputy possibly had the right to conduct a Terry stop. Who's he who argued? Say that again? You said he argued? Oh, no, I'm sorry. I stumbled over my words. Yeah, you know I stumble over my words. That's well established. But the judge found that this deputy possibly had the right to do the Terry search, but he just went too far, is what he said. So the judge apparently found him credible by implication. That's absolutely right. You think it was a furtive movement? Absolutely. I don't see any other explanation for that statement other than he had the right to get him out of the car and pat him down, but he obviously felt he went too far at that point. But that's it. That's my interpretation, of course. Counsel has one minute. Thank you. If there are any other questions, I'd be happy to answer them. Thank you. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible.